IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

LIEBHERR-AMERICA, INC.
d/b/a LIEBHERR USA, CO.,
LIEBHERR MINING EQUIPMENT
NEWPORT NEWS CO., and
LIEBHERR LOGISTICS USA, CO., and

LIEBHERR AEROSPACE SALINE, INC., and

LIEBHERR GEAR AND AUTOMATION
TECHNOLOGIES, INC.

   Plaintiffs,

v.　　　　　　　　　　　　　　　　　　　　　　　Case No. 1:26-cv-01257

U.S. CUSTOMS AND BORDER PROTECTION,
and RODNEY S. SCOTT, in his official capacity as
Commissioner of U.S. Customs and Border Protection;
and UNITED STATES OF AMERICA,

   Defendants.

## COMPLAINT

1. Plaintiffs are importers as defined in 19 C.F.R 101.1. Plaintiffs bring this suit because they were forced to pay tariffs that have since been deemed unlawful.

2. Through a series of executive orders that began in February 2025, the President imposed sweeping and substantial new tariffs ("IEEPA duties"). In doing so, he cited the International Emergency Economic Powers Act ("IEEPA") as the purported authority to impose the IEEPA duties. The IEEPA duties were imposed on goods imported from nearly every foreign country, including countries from which Plaintiffs source their imports of materials and finished products and transport imports on behalf of themselves and/or their customers. Plaintiffs were responsible for paying—and did pay—these IEEPA duties on the imported goods.

I-3031029.4

3. On February 20, 2026, the U.S. Supreme Court struck down these tariffs, holding the IEEPA duties are unlawful because "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. V. Trump,* No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump,* 149 F.4411 1312 (Fed. Cir. 2025)).

4. The Supreme Court also confirmed that challenges to the IEEPA tariffs fall "within the exclusive jurisdiction of" this Court. *Id.* at 5. Thus, this Court has jurisdiction and authority to order remedial relief and refunds of IEEPA duties paid by importers.

5. Accordingly, for the reasons set out in *Learning Resources,* Plaintiffs seek a full refund from Defendants of all IEEPA duties Plaintiffs have paid to the United States.

## PARTIES

6. Plaintiff Liebherr-America, Inc. is a U.S. Company incorporated in Virginia and has its principal place of business in Virginia. Liebherr-America, Inc. does business as Liebherr USA, Co., Liebherr Logistics USA, Co., and Liebherr Mining Equipment Newport News Co.

7. Plaintiff Liebherr Aerospace Saline, Inc. is a U.S. Company incorporated in Virginia, with its principal place of business in Michigan.

8. Plaintiff Liebherr Gear and Automation Technologies, Inc., is a U.S. Company incorporated in Virginia, with its principal place of business in Michigan.

9. Defendant United States Customs and Border Protection ("CBP") is a component agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. CBP is responsible for border security and collecting tariffs or duties and taxes on goods imported into the United States.

10. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

I-3031029.4

11. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

12. Defendants are referred to collectively in this Complaint as "CBP."

13. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i).

14. This Court has the same powers as a United States District Court, whether arising in law, equity, or by statute. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, this Court can enter a money judgment against the United States and can order any other appropriate civil relief. 28 U.S.C. §§ 2643(a)(1), (c)(1).

15. Plaintiffs have standing to bring this lawsuit because they are importers of goods imported into the United States from countries subject to the IEEPA duties as implemented and collected by CBP, which the Supreme Court has now determined were unlawful. As a result of the executive orders identified in this lawsuit, Plaintiffs paid IEEPA duties to the United States and suffered injury caused by those orders. The relief Plaintiffs seek from this Court would redress those injuries.

## GENERAL PLEADINGS

I. **The President Orders a Series of Tariffs, Invoking IEEPA for His Authority**.

    A. *The IEEPA Duties*

16. On February 1, 2025, the President issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. The IEEPA was the purported source of authority for each of the tariffs.

17. The executive order directed at Mexico, Executive Order 14194, 90 Fed. Reg. 9,117, *Imposing Duties To Address the Situation at Our Southern Border* (Feb. 7, 2025), imposed an additional 25% tariff on the import of goods from Mexico, with certain exceptions.

3

18. The executive order directed at Canada, Executive Order 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border,* 90 Fed. Reg. 9,113 (Feb. 7, 2025), also imposed a 25% tariff, with certain exceptions.

19. Finally, the executive order directed at China, Executive Order 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 9,121 (Feb. 1, 2025), imposed an additional 10% *ad valorem* tariff on products from China imported into the United States. This tariff was imposed on top of existing duties.

20. On February 5, 2025, just four days after the initial executive orders, the President issued another order, Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 9,277 (Feb. 11, 2025).

21. On March 3, 2025, the President raised the incremental tariffs on imports from China to 20% by amending the China Tariff Order through Executive Order 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 11,463 (Mar. 7, 2025) ("March 3 Amendment").

22. On April 2, 2025, citing trade deficits with the U.S.'s trading partners as a national emergency, the President issued Executive Order 14257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits,* 90 Fed. Reg. 15,041 (Apr. 7, 2025) ("Reciprocal Tariff Order"). The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports to the United States, effective April 5, 2025, and additional "reciprocal" tariffs on 57 countries, effective April 9, 2025. *Id.* at Annex I. These higher country-specific tariffs range from 11% to 50%. *Id.*

23. China imposed retaliatory tariffs on the United States. On April 8, 2025, the President responded to those retaliatory tariffs by raising the reciprocal tariff rate on China by 50 percentage points. Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China,* 90 Fed. Reg. 15,509 (Apr. 14, 2025). This brought the tariff up to 84% from the previous 34%.

24. The next day, the President issued a 90-day suspension of the higher country-specific tariffs on all countries except for China. Rather than suspend the tariff imposed on China, he raised the "reciprocal" tariff imposed from 84% to 125%. Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment,* 90 Fed. Reg. 15,625 (Apr. 15, 2025). This reciprocal tariff was in addition to a separate 20% tariff on imports from China, which remained in place. As a result, most imports from China faced a minimum 145% IEEPA tariff.

25. Through these executive orders, the President directed changes to the Harmonized Tariff Schedule of the United States ("HTSUS") by requiring that goods subject to the IEEPA duties be entered under new tariff codes.

26. On April 14, 2025, several companies initiated the litigation that ultimately led to the Supreme Court's February 20, 2026, ruling. Those companies began by filing an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections, et al. v. Trump, et al.,* No. 25-cv-00066 (Dkt. 2). This Court held the orders were unlawful and the Federal Circuit, sitting *en banc,* affirmed. The Federal Circuit's decision was, in turn, affirmed by the Supreme Court on February 20, 2026.

27. In the months following the *V.O.S. Selections* complaint, the President, invoking the IEEPA, issued additional executive orders imposing additional tariffs and modifying others.

28.     CBP continued to collect IEEPA duties imposed by the executive orders, purportedly issued under the IEEPA, while the *V.O.S. Selections* litigation and related litigation remained pending. The CBP just announced on February 22, 2026, that duties imposed under those executive orders "will no longer be collected for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026." Cargo Systems Messaging Service Message # 67834313, *Ending Collection of International Emergency Economic Powers Act Duties* (Feb 22, 2026).[1]

29.     Through this Complaint, Plaintiffs seek relief as a result of all duties they have paid or will pay to the United States arising from the IEEPA executive orders ("Challenged Tariff Orders").

B.     *CBP's Implementation of the Tariffs*

30.     CBP is charged with the assessment and collection of duties, including the IEEPA duties. *See* 19 U.S. C. §§ 1500, 1502.

31.     In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the new tariff nomenclature: the Harmonized Tariff Schedule of the United States. Pub. L. No. 100-418, 102 Stat. 1107 (1988). CBP classifies merchandise imported into the United States consistent with the HTSUS, which sets out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. 19 U.S.C. § 1202. The primary headings of the HTSUS describe broad categories of merchandise, while its subheadings provide a particularized division of the goods within each category. *Id.*

32.     CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. § 152.11 ("Merchandise shall be classified in

---

[1] Available at https://content.govdelivery.com/bulletins/gd/USDHSCBP-40blle9?wgt_ref= USDHSCBP WIDGET 2.

4

I-3031029.4

accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

33. The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential orders. 19 U.S.C. §§ 1202, 3005, 3006; *see also Michael Simon Design, Inc. v. United States,* 33 C.I.T. 1003, 1010 (2009) ("The authority to modify the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States,* 582 F. Supp. 3d 1365, 1378-79 (Ct. Int'l Trade 2021).

34. When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, after confirming the HTSUS classification of the goods, according to the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

*C. Liquidation*

35. A "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

36. Typically, when goods enter *(i.e.,* are imported into) the United States, the importer of record pays an estimated duty on the *entry* based on its customs declaration, which asserts a value, origin, and HTSUS classification for the imported goods. *See* 9 U.S.C. § 1484. CBP then reviews the customs declaration and may inspect the goods.

37. CBP then fixes the final appraisement of merchandise by confirming the final value, classification, duty rate, and final amount of duty for the imported goods. *See* 19 U.S.C. § 1500.

38. Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(b).

39. Liquidation—unless extended—must happen within one year. *See* 19 U.S.C. § 1504(a). Typically, CBP liquidates entries 314 days after the date of entry of the goods (automatic liquidation cycle) and will post a notice on its website. 19 C.F.R. § 159.9.

40. CBP has discretion to extend the deadline for liquidation for up to one year pursuant to an importer's request and a showing of good cause. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

41. Once liquidation has occurred, and if the liquidation is capable of being protested, an importer of record has 180 days to file a protest contesting the liquidation, asking CBP to "reliquidate" the duties. *See* 19 U.S.C. § 1514.[2] Not all liquidations are able to be protested. Specifically, where CBP imposes a duty in a ministerial capacity (i.e., it lacks discretion on whether to impose the duty), the entry's liquidation cannot be protested. *Id.; see also Rimco Inc. v. United States,* 98 F.4th 1046, 1053 (Fed. Cir. 2024).

42. In *AGS Co. Automotive Sol. v. U.S. Customs and Border Protection, et. al.,* No. 25-00255 (Ct. Int'l Trade Dec. 15, 2025) *("AGS"),* a three-judge panel of this Court confirmed this Court has authority to reliquidate entries subject to the IEEPA duties. *Id.* In a related action, the government represented that it "will not object to the Court reliquidating any of plaintiffs' entries subject to IEEPA duties that are found to be unlawful." *Princess Awesome, LLC v. U.S. Customs and Border Protection, et. al.,* No. 25-078, ECF No. 16 at 12 n.4 (Ct. Int'l Trade May 23, 2025).

## II. The Supreme Court Held the IEEPA Duties are Not Authorized

43. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the government

---

[2] CBP can also voluntarily reliquidate within 90 days of the liquidation. *See* 19 U.S.C. § 1501.

from enforcing the IEEPA duties at issue in that case. That decision was appealed to the Court of Appeals for the Federal Circuit.

44. The Federal Circuit stayed this Court's decision and injunction pending a hearing. As a result, the CPB continued collecting IEEPA duties while the litigation proceeded.

45. Sitting *en banc,* on August 29, 2025, the Federal Circuit affirmed this Court's decision that the IEEPA duties are unlawful. *See V.O.S. Selections, Inc. v. Trump,* 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted,* No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

46. In a separate lawsuit filed by a separate group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Res., Inc. v. Trump,* 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment,* No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources.* The cases were consolidated, with argument on November 5, 2025.

47. On February 20, 2026, the Supreme Court issued its opinion in both cases, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources,* slip op. at 20.[3]

### III.   Plaintiffs Paid IEEPA Duties

48. As of the date of this Complaint, Plaintiffs have paid IEEPA duties imposed by the Challenged Tariff Orders.

---

[3] This complaint cites to the *"Learning Resources"* slip opinion because that was the lead case at the Supreme Court for purposes of the case caption. The *Learning Resources* case itself was vacated for lack of jurisdiction, while the Federal Circuit's decision in *V.O.S. Selections* was affirmed.

49. The goods Plaintiffs import into the United States that are subject to IEEPA tariffs entered the United States from foreign countries under new HTSUS codes that differed from the HTSUS codes that would have applied to the imports in the absence of the Challenged Tariff Orders.

50. Plaintiffs have paid IEEPA duties on numerous entries.

## COUNT I
## THE CHALLENGED TARIFF ORDERS ARE UNLAWFUL FOR THE REASONS STATED BY THE SUPREME COURT IN *LEARNING RESOURCES*

51. Plaintiffs incorporate paragraphs 1-50 above by reference.

52. In *Learning Resources,* the Supreme Court considered challenges to the President's authority to impose tariffs under IEEPA and held that the President exceeded his authority under IEEPA, 50 U.S.C. § 1701 et seq., when he imposed tariffs on imported goods.

53. The Supreme Court held that all tariffs imposed under IEEPA are unlawful. In the Supreme Court's words, "[o]ur task ... is to decide only whether the power to 'regulate . . . importation,' as granted to the President in IEEPA, embraces the power to impose tariffs. It does not." *Learning Resources,* slip op. at 16.

54. The Challenged Tariff Orders purport to impose duties and modify the HTSUS solely under IEEPA.

55. In its motion to the Federal Circuit in *V.O.S. Selections* to stay this Court's judgment, including the injunction against enforcement of the IEPPA duties, CBP represented that it was willing to issue refunds if the plaintiffs were ultimately successful, stating "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any postjudgment interest that accrues." Gov't. Mot. Stay Pending Appeal at 25, *V.O.S. Selections, Inc. v. Trump,* 149 F.4th 1312 (Fed. Cir. 2025). The stay was granted after CBP made that representation.

56. This Court is bound by the Learning Resources decision and, as a result of that decision, should order refunds of all IEEPA duties paid by Plaintiffs, with interest as provided by law.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that this Court:

a) order CBP to reliquidate any entries that have been liquidated with IEEPA duties;

b) order CBP to liquidate all unliquidated entries subject to IEEPA duties without IEEPA duties;

c) order the United States to refund to Plaintiffs the duties collected from Plaintiffs on all entries subject to IEEPA duties, with interest as provided by law;

d) award Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action; and

e) grant such further relief as this Court deems proper.

Dated: February 27, 2026                    Respectfully submitted,

LIEBHERR-AMERICA, INC., LIEBHERR AEROSPACE SALINE, INC., and LIEBHERR GEAR AND AUTOMATION TECHNOLOGIES, INC.

By: /s/Leonard L. Fleisig
Leonard L. Fleisig (VSB No. 83500)
Willcox & Savage, P.C.
440 Monticello Avenue, Ste. 2200
Norfolk, Virginia 23510
(757) 628-5500 Telephone
(757) 628-5566 Facsimile
lfleisig@wilsav.com
*Counsel for Plaintiffs*